UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

REGINALD HOLDEN,

    Plaintiff,

v.                                                                 Case No. 19-13235

CHRISTOPHER KERTESZ,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S REMAINING MOTIONS**

Plaintiff Reginald Holden brings this action against his former father-in-law for tortious interference with a business relationship and abuse of process. He seeks damages in excess of $75,000, related to Defendant Christopher Kertesz's attempts to obtain and then collect on a state court judgment. Plaintiff contends that by serving him at his place of employment, Defendant effectively caused Plaintiff to lose his job and eventually his house. Defendant moves for summary judgment, arguing that the court lacks jurisdiction to review this case under the *Rooker-Feldman* doctrine and that, alternatively, Plaintiff cannot succeed on his claims on the merits. (ECF No.40.) In response, Plaintiff, proceeding *pro se,* filed a document which appears to be a combination response to Defendant's motion and a cross motion for summary judgment. (ECF No. 41.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, Defendant's motion will be granted and Plaintiff's motion will be denied.

## I. BACKGROUND

This case has a relatively simple factual background, but a lengthy procedural history. Because the procedural history forms the basis of the instant motion, the court will detail it below. The specifics of the procedural history do not appear to be in dispute.

On September 27, 2010, Defendant Christopher Kertesz loaned $80,000 to his daughter Nina Holden and her husband Plaintiff Reginald Holden ("Holden") so they could pay off the mortgage of a rental property they owned at 9922 Westwood Street in Detroit, Michigan. (The "Loan"). Five and a half years later, Nina Holden and Plaintiff divorced. Pursuant to a March 26, 2016 order, the Wayne County Circuit Court decreed that Plaintiff Holden was solely responsible for the repayment of the Loan. (Case No. 2015-102581-DM.) Following their divorce, the Loan went into default, prompting Defendant Kertesz to initiate an action in Wayne County Circuit Court for breach of contract and unjust enrichment. (Case No. 17-007965-CK.) Before service could be effected on Holden, he filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code and the breach of contract action against him was automatically stayed. On August 28, 2017, the bankruptcy case was dismissed with a 180-day bar to re-filing due to "willful violations" of Holden's duties as a debtor. (ECF No. 40, Ex. D, PageID.383-84.)

On October 31, 2019, Kertesz refiled his breach of contract action against Holden in Wayne County Circuit Court. (17-015743-CK.) After being served, Holden did not file an answer and a clerk's entry of default was entered. The default was served on Holden at the William Dickerson Detention Facility where he was incarcerated, and also

mailed to his residence. In response, Holden filed a Counter-Complaint, which Kertesz contends was "much like" the Complaint filed in the instant matter. (ECF No. 40, PageID.365.) Because a default had already been entered, Kertesz filed a motion to strike the Counter-Complaint; Kertesz also filed a motion for default judgment. Holden personally appeared at the hearing on the two motions, and the judge adjourned the hearing to give Holden two weeks to hire an attorney and seek to have the default set aside. In the next two weeks, Holden did not find an attorney or move to set aside the default. Instead, he filed additional pro se Counter-Complaints. On June 4, 2018, the court reconvened for the hearing on the pending motions to strike and for default judgment. Holden appeared pro se and Judge Susan Hubbard granted both motions, imposing a default judgment against Holden in the amount of $56,218.77. (ECF No. 40, Ex. B, PageID.379-80 (The "Judgment").) Holden did not appeal. Instead he filed another pro se Counter-Complaint, which was ignored by the state court as it was filed post-judgment. (ECF No. 40, PageID.366.) In total, Holden filed two Counter-Complaints on April 17, 2018, a Cross-Complaint on April 30, 2018, a Counter-Complaint on May 31, 2018, and a Counter-Complaint on October 18, 2019. (*Id.,* n.1.) Defendant Kertesz asserts that all of those cross and counter complaints contained similar or identical claims as those advanced in the instant lawsuit.

After issuance of the default judgment, Kertesz obtained a writ of garnishment and served it on Holden's bank. Shortly thereafter, Holden filed another bankruptcy, this time under Chapter 7 of the United States Bankruptcy Code. During the Chapter 7 Bankruptcy, the United States Trustee filed an adversary complaint against Holden seeking to deny him a discharge for violations of 11 U.S.C. § 727. On January 4, 2019,

3

the Trustee obtained a default judgment against Holden, which effectively denied him a discharge of his debts. (ECF No. 40, Ex. E, PageID.385.)  Thus, the prior default judgment obtained by Kertesz remains enforceable.

According to Kertesz, Holden had made no efforts to satisfy the judgment. Kertesz last obtained a writ of garnishment from Wayne County Circuit Court on October 4, 2019.  There is nothing in the record to suggest Holden availed himself of any state court remedies to set aside the default judgment.  He never filed an Answer in the original state court case for breach of contract, did not file a motion to set aside the default or default judgment, and did not appeal the judgment.

Instead, Holden has chosen to continuously assert claims against Kertesz—first in the state court as counter or cross complaints, and now in this action. Holden's Complaint includes two counts: Count 1, which asserts tortious interference with a business relationship and Count 2, which asserts abuse of process. Holden's *pro se* complaint and brief are somewhat difficult to decipher, but in his Response/Cross-Motion he complains of actions taken by Kertesz dating back to July 13, 2016, and continuing into 2020, all of which relate to the service of legal papers from the prior state and bankruptcy court cases and the requests for garnishments in enforcing the state court judgment. Holden complains that service of these papers at his place of employment constituted harassment and resulted in him losing his job, salary, and employment benefits. (ECF No. 41, PageID.390-391.)  He also complains that he was never properly served with the complaint in the prior state court action, and that he presented "good faith" and "good cause" to the state court judge. (ECF No. 41, PageID.393-394.)  Holden further contends that Kertesz took improper actions in state

4

court while his bankruptcy proceedings were pending. (ECF No. 41, PageID.394.) Kertesz moves for summary judgment and/or dismissal of all claims.

## II.  STANDARD

### A.  Summary Judgment

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party

5

opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### B. Dismissal under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining

whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. DISCUSSION

#### A. *Rooker-Feldman* Doctrine

Kertesz first argues that the court lacks jurisdiction over Holden's complaint due to the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The doctrine does not apply every time there is a prior state court case addressing similar subject matter. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). Rather, the Sixth Circuit has recently reminded courts that the doctrine has a limited scope. It does not, for example, bar "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)).

In order to determine the applicability of the *Rooker-Feldman* doctrine, a court must look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *VanderKodde*, 951 F.3d at 402 (citing *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008) (quoting McCormick, 451 F.3d at 394). Thus, "[a] court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.'" *VanderKodde*, 951 F.3d at 402, (quoting *Berry*, 688 F.3d at 299).

Given the pro se nature of Plaintiff Holden's complaint, his request for relief is somewhat nebulous. He appears to seek relief based on two broad categories: First, he seeks relief based on his allegation that Judge Hubbard's June 4, 2018 default judgment was improperly entered. (ECF No. 41, PageID.393-394.) He argues he was never properly served and that he showed good cause to set aside the default judgment. (*Id.*) These allegations, however, fall squarely within the *Rooker-Feldman* doctrine and are therefore barred. As the Supreme Court has heled, *Rooker-Feldman* applies in the "narrow" set of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon,* 544 U.S. at 284. Here, Holden is the quintessential state-court loser complaining about the state-court judgment entered against him, and inviting this court to review the propriety of that judgment. This court lacks jurisdiction to do so under 28 U.S.C. §

1257, which vests sole jurisdiction to review such claims in the Supreme Court. *Berry*, 688 F.3d at 298. If Holden wanted to challenge the state-court default judgment, he should have filed the proper motions in the state court and pursued any appeal through the proper channels.  This court cannot disturb the state court's default judgment based on any allegation of impropriety, and any such claim brought in this action is therefore barred.

However, Holden also seeks relief based on Kertesz's actions in pursuing and enforcing the default judgment, related to his manner and methods of service of process and service of writs of garnishment.  These allegations do not attempt to disturb the state court judgment, but rather seek damages based on tangential actions unrelated to the merits of the claims.  *Rooker-Feldman* "applies only when a state court renders a *judgment*—when the court investigates, declares, and enforces liabilities based on application of law to fact." *VanderKodde*, 951 F.3d at 402 (citations and quotations omitted). "A writ of garnishment is not a judgment—it is the result of a ministerial process, in which the clerk of the court has a nondiscretionary obligation to issue the writ if the request "appears to be correct," MCR 3.101(D). *VanderKodde*, 951 F.3d at 402 (internal citations and quotations omitted).  To the extent Holden seeks damages based on Kertesz's alleged improper actions in service and in execution of the writs of garnishment, these claims are not barred by the *Rooker-Feldman* doctrine, and the court does not lack jurisdiction over them.

### B. Merits of the Claims

Kertesz next argues that, to the extent any claims survive the *Rooker-Feldman* doctrine, he is nonetheless entitled to summary judgment under Federal Rule of Civil

9

Procedure 56, or that they should be dismissed under Federal Rule of Civil Procedure 12(b)(6). The court agrees that his motion should be granted under either standard, but inasmuch as Kertesz presents an affidavit and relies on matters outside the pleadings, the court will analyze it under Rule 56.

Holden brings two claims. The first claim alleges tortious interference with a business relationship. He claims that in serving legal documents on Holden and in executing writs of garnishment, Kertesz interfered with his employment at Ferndale School District, causing him to lose his employment and future school-related jobs. The elements of tortious interference with a business relationship are as follows:

> [1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3] an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [4] resultant damage to the plaintiff.

*BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. 1996); *see also Dalley v. Dykema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010). "Where the interference alleged was a lawful act, a plaintiff must demonstrate that it was undertaken with malice and without justification by showing, 'with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference.'" *Dalley*, 788 N.W.2d at 696 (citing *BPS Clinical Labs*, 552 N.W.2d at 925).

All of the actions about which Holden complains were done with the legitimate purpose of serving legal papers or writs of garnishment. Indeed, Kertesz has submitted an affidavit, in which he details the methods he took in serving these papers. (ECF No. 40, PageID.377-378.) He avers that the service was in accordance with state court rules, and was done for a legitimate purpose, that his "communication with the employer was professional polite, not disparaging, and for a legitimate purpose." (*Id.* ¶¶ 8-9.) He

10

further avers that he "has not intentionally or improperly interfered with the contracts and business relationships between Reginald Holden and any of his employers" and that, indeed, it is in his, his daughter's, and his grandson's "best interests that Reginald Holden be prosperous, stable, and gainfully employed." (*Id.* ¶¶ 3, 4, 11.)

In light of this undisputed evidence, and consistent with the facts as alleged even in Holden's complaint, Kertesz is entitled to judgment as a matter of law. There is simply nothing tortious about the valid execution and service of legal papers at a person's place of employment. "[I]n order to succeed under a claim of tortious interference with a business relationship, the plaintiffs must allege that the interferer did something illegal, unethical or fraudulent. There is nothing illegal, unethical or fraudulent in filing a lawsuit, whether groundless or not." *Dalley*, 788 N.W.2d at 696 (citation omitted) (holding that pursuit of a TRO and a vindictive, groundless lawsuit which disrupted plaintiff's business relationship did not set forth a claim for tortious interference with a business relationship).

The same is true if Holden's complaint is read to assert a claim for tortious interference with a contract. "The elements of tortious interference with a contract are: (1) a contract, (2) a breach, and (3) instigation of the breach without justification by the defendant." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). "[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green*, 360 N.W.2d 881, 886 (Mich. Ct. App. 1984). Where, as here, "the defendant's conduct was not wrongful per

11

se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 812 (Mich. Ct. App. 2002). Holden has not alleged or shown any unlawful purpose of the alleged interference.  In the absence of any showing of a triable issue, summary judgment must be granted to Kertesz. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587 ("[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'").

Finally, Holden brings a claim for abuse of process. "A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure, e.g., where the defendant utilizes discovery in a manner consistent with the rules of procedure, but for the improper purpose of imposing an added burden and expense on the opposing party in an effort to conclude the litigation on favorable terms." *Dalley*, 788 N.W.2d at 695 (citing *Vallance v. Brewbaker*, 411 N.W.2d 808 (Mich. Ct. App. 1987)). To support a claim for abuse of process, the pleadings must allege with specificity an act committed in the use of process "that is improper in the regular prosecution of the proceeding*." Early Detection Ctr., P.C. v. New York Life Ins. Co*., 403 N.W.2d 830, 835 (Mich. Ct. App. 1986).  As with the tortious interference claim, Holden has failed to allege or show facts which could support any ulterior, improper purpose associated with the service of papers and execution of writs of garnishment. Holden claims generally that he was harassed, but "the ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business." *Id.*  Particularly in light of Kertesz's affidavit, but even accepting the

allegations in Holden's complaint, Holden has failed to identify even a scintilla of evidence to support his claim, let alone enough which would be sufficient for a reasonable jury to return a verdict for him. *Anderson*, 477 U.S. at 248. Defendant Kertesz is therefore entitled to judgment as a matter of law.

### C. Remaining Motions

Also pending before the court are various other motions filed by Plaintiff, all of which are without merit. First, Plaintiff filed a motion to amend his pleadings, seeking to add additional claims against Defendant. (ECF No. 23). The motion is procedurally improper in that it does not attach a proposed amended complaint, as is required under Eastern District of Michigan Local Rule 15.1. Moreover, even if the court were to consider the motion, it would be denied for similar reasons as expressed in this opinion. Although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," justice does not require the court to grant leave to amend a pleading if to do so would be futile. *In re Ford Motor Co. Securities Litigation, Class Action*, 381 F3d 563, 574 (6th Cir 2004). Here, the majority of Plaintiff's proposed amendments would be barred by the *Rooker-Feldman* doctrine as they challenge the validity of the prior state court rulings. Any remaining claims are, again, based on the proper service of legal papers. The motion will therefore be denied.

Plaintiff has also filed various motions to compel discovery. (ECF Nos. 30, 33.) The motions universally seek discovery that is overbroad, irrelevant, and largely designed for improper purposes. The discovery appears to be aimed at challenging the default judgment and Defendant's right to collect on the default judgment. Such discovery is barred by *Rooker-Feldman*, and does not impact the court's analysis that

Plaintiff has failed to allege facts sufficient to support his claims.  None of the requested discovery would alter the court's conclusion.

Plaintiff has filed two motions seeking a jury trial. (ECF Nos. 43, 44.) In light of the disposition of the summary judgment motions, those motions will be denied as moot.

### IV. CONCLUSION

As discussed above, the court lacks jurisdiction under the *Rooker-Feldman* doctrine to review Holden's challenges to the state-court default judgment. And he cannot sustain a claim for abuse of process or tortious interference based on the execution of that judgment or the underlying service of processes.  Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment (ECF No. 40) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 41) is DENIED.  Finally, IT IS ORDERED that Plaintiff's remaining motions (ECF Nos. 23, 30, 33, 43, 44) are DENIED.

                                                  s/Robert H. Cleland                  /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 29, 2021, by electronic and/or ordinary mail.

                                                  s/Lisa Wagner                     /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\CHD\Orders and Opinions\19-13235.HOLDEN.MotionforSummaryJudgment.chd.docx